IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Huntington Division

TARA ALIFF,

          Plaintiff,

v.                                  Civil Action No. 3:16-cv-1019
                                   Chambers, Judge

BANK OF AMERICA, N.A., and
DITECH FINANCIAL, LLC,

          Defendants.

## PLAINTIFF'S RESPONSE TO
## DEFENDANTS' MOTION TO DISMISS

        Plaintiff Tara Aliff, by her counsel J. William St Clair and Legal Aid of
West Virginia, asks the Court to deny Defendants' Motion to Dismiss because she has
plead facts sufficient to set forth three claims upon which relief can and should be
granted to her. In support, Ms. Aliff submits the following:

## I. BACKGROUND

        This lawsuit was filed because Bank of America and Ditech unnecessarily
delayed processing a refund check so as to benefit themselves at the expense of Ms.
Aliff. The sums constituting the respective benefit to the lender and loss to the borrower
may seem relatively small, yet such small sums are a big deal to underprivileged people
like Ms. Aliff.

        On July 20, 2016, Ms. Aliff's residence located at 1102 Van Buren Avenue

1

in West Huntington became a total loss following a fire in her home. Her insurer,

Nationwide, eventually issued a check on August 9, 2016, payable to both Ms. Aliff and

Bank of America in the amount of $58,132.30. The Nationwide check was mailed to Ms.

Aliff. Bank of America was a loss payee on the insurance policy because Ms. Aliff's

home was encumbered by a deed of trust she granted to the Bank on a loan she

incurred on August 4, 2009. Ms. Aliff had been sending her monthly mortgage

payments to Ditech for some time at the direction of Bank of America. On August 22,

2016, Ms. Aliff's  attorney telephoned Ditech and spoke to a customer service

representative who advised that Ditech would accept the check on behalf of Bank of

America. That same day, Ms. Aliff endorsed the check and had it mailed to Ditech with

a cover letter and form signed by Ms. Aliff authorizing Ditech to speak with her attorney.

(Exhibit A) The letter requested the amount in excess of the payoff be refunded.

Ditech received the check on August 29, 2016. Ditech delayed paying off

the loan for two days until August 31, 2016. Then Ditech delayed again by holding onto

the refund owed to Ms. Aliff. Her attorney telephoned and emailed Ditech on September

16, 2016, inquiring about the refund. (Exhibit B) This inquiry may have spurred Ditech

into some action because the company issued a check payable to Ms. Aliff dated

September 16, 2016, in the amount of $22,870.89. (Exhibit C) However, the servicer

delayed another three days in mailing the check, delivering it to the post office on

September 19, 2016, as stated on the envelope in which the check was enclosed.

(Exhibit D)

Ms. Aliff filed suit in the Circuit Court of Cabell County on September 19,

2016, before she received her refund. After eventually receiving the refund check on

2

September 23, 2016, Ms. Aliff requested an accounting of the payoff and escrow account. Ditech sent a Short Year Escrow Account Disclosure Statement dated September 16, 2016, which shows that her refund following payoff of the loan was deposited in the escrow account. (Exhibit E) Discussion with Ditech's counsel provided Ms. Aliff with no satisfactory reasons for the delays, so she amended her complaint on October 18, 2016, to reflect that the delayed payment was eventually received, and to clarify that she had incurred additional interest charges for Ditech's failure to credit her payment on the date it was received. Defendants removed the case to this Court and filed their Motion to Dismiss.


II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. Although courts may rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference, see *Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985), courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. See *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996). A court will grant a motion to dismiss only if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Johnson v. Mueller*, 415 F.2d 354, 354 (4th Cir. 1969).

3

III. DISCUSSION

    1. Section 1639f claim

        This statute is concise and easy to read: "... no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt..." Ms. Aliff's complaint therefore makes simple and concise allegations: Ditech received the payment on August 29, 2016, and credited her account two days later on August 31, 2016. The violation of the statute is clear in these "barebones allegations" (Defendants' Memo, p. 5) because Section 1639f is a "barebones statute".

        Certainly there are two exceptions to the same-day-crediting-of-a-payment rule which Ditech as the servicer points out in its memorandum, namely 1) the delay did not result in any charge or negative credit information to the consumer; or 2) a delay of 5 days is acceptable by Ditech accepting a payment that does not conform its specific instructions for Ms. Aliff to follow in making her payoff, PROVIDED Ditech gave such specific instructions in writing.

        Ms. Aliff did not mention these two exceptions in her First Amended Complaint because neither apply. It seems Ditech insists in its Memorandum that Ms. Aliff must make logical fallacies in her pleadings (raising straw man arguments to knock them down) by insisting that she is required to raise up the exceptions in her complaint and then prove they do not apply. To be clear, if Ms. Aliff considered either of these exceptions applicable, then this claim would not have been asserted.

        Rather, Ms. Aliff's First Amended Complaint states the statute was violated. The two-day delay in crediting her payment caused her to incur additional

interest charges.[2] If Ditech believes that either or both exceptions apply, then the

servicer may raise them as an affirmative defense. Interestingly, Ditech does not allege,

much less establish, in its Memorandum that either exception applies: Ditech does not

state Ms. Aliff did not incur additional charges by the delay, nor that she failed to follow

specific written instructions in sending her payoff. These allegations are not made for

one simple reason - they do not apply. To make this clear: 1) Ditech provided a written

explanation stating that interest is charged on a daily basis until the payoff is received.

(Exhibit F); and 2) the cover letter sent to Ditech with the check (Exhibit A) reflects that

Ms. Aliff was in fact following Ditech's instructions given over the phone regarding

delivery of the payoff.

    2. <u>Section 1666d claim</u>

        The parts of the statute relevant to this case provides:

    Whenever a credit balance in excess of $1 is created in connection with a
consumer credit transaction through transmittal of funds to a creditor in excess of
the total balance due on account, the creditor **shall refund** any part of the
amount of the remaining credit balance, upon request of the consumer.
[Emphasis added]

The statute gives Bank of America and Ditech clear directions: Upon request of Ms.

Aliff, the lender shall refund the excess funds. The cover letter sent to Ditech with the

Nationwide check made it clear that she requested a refund after paying off the loan.

The word "refund" is an action verb with its origin in the Latin word *refundere* which

---

    [2]    Ms. Aliff cannot presently calculate this additional interest charge with certainty because
her copy of the promissory note she made to Bank of America was lost in the fire or
subsequent dislocation. However, she estimates the additional interest charge she paid
because of the two-day delay is about $15.

means "to pour back".[3] The action verb in the statute is not followed by an adverb which limits or qualifies the action of "refunding", such as "refund leisurely" or "refund reluctantly". Instead, the word "refund" is preceded by the word "shall", which is a mandatory command normally creating an obligation to do it. *Lexecon, Inc. v. Milberg, Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998).

After receiving the Nationwide check on August 29, 2016, Ditech credited and paid off the Bank of America loan two days later. At that point, on August 31, 2016, Bank of America had received its $35,488.65 payoff, with Ms. Aliff's funds of $22,643.65 being "refundable" to her.[4] This triggered the word "shall" in the statute thereby mandating and obligating Ditech to actually "refund" and return to Ms. Aliff her money.

Instead, Bank of America and Ditech apparently read Section 1666d as implying that they shall refund *eventually* the funds to Ms. Aliff. The lender and servicer offer no explanation for the delay, no reason why Ms. Aliff's check was not written on August 31, 2016, and no rationale justifying the withholding of her funds for 21 days. It is almost as if Bank of America and Ditech are saying to this Court, "She got her money eventually. What's the problem?" The problem is that the withholding the refund is wrong, tantamount to a conversion. Granted the conversion was temporary. But in the end, it is a conversion, akin to an auto repair facility retaining a repaired vehicle for 21 days, driving it around for 3 weeks, before eventually returning it to the owner. Bank of

---

[3]  http://www.etymonline.com/index.php?term=refund

[4]  The $227.24 difference between the amount refundable ($22,643.65) and the amount of the check ($22,870.89) represents a refund of the balance of the escrow account set up to pay taxes and insurance.

6

America and Ditech retained, used and "drove around" Ms. Aliff's funds for 21 days without her permission.

This is a case of first impression addressing the timing of a payoff refund under Section 1666d(1)(2)(B).[5] Both the statute and explanatory regulation, *12 C.F.R. § 226.21*, do not specify a time period for the refund. One can see that Congress and the Consumer Financial Protection Bureau routinely place timing requirements and deadlines on lenders and servicers in other parts of TILA, as shown in the preceding discussion of Section 1639f. Yet no time requirement is specified for a refund following a payoff in Section 1666d(1)(B). Ms. Aliff suggests no provision is needed because the words *shall refund* give Bank of America, Ditech and other lenders and servicers sufficient, clear and unambiguous direction: Just do it - refund the money. Certainly, *shall refund* cannot imply withholding a consumer's funds 21 days.

Ms. Aliff's allegation of commercial reasonableness with reference to the Expedited Availability of Funds Act (EAFA) was an effort by her to be reasonable in the expectation of receiving her refund. Ms. Aliff could take the position that Ditech was required to issue and mail her the refund the same day the promissory note was satisfied, especially since the payoff check Ditech received was issued on a Nationwide Insurance account. But what about unusual situations, such as an excess funds payoff check issued by an individual on an account with a local bank? In such instances, Ditech would probably want to wait for that check to clear before issuing the refund,

---

[5]     Defendants' reference to the decision in *Vincent v. Money Store*, 402 F.Supp2d 501 (S.D.N.Y 2005), addresses rebates of unearned finance charges, and not the payoff of a loan.

which would be commercially reasonable. Applying the EAFA would take this and other similar contingencies into account in explaining some delay in certain situations.

But Bank of America and Ditech offer no rule nor reason for withholding Ms. Aliff's funds for 21 days. They reference a RESPA regulation allowing servicers up to 30 days to refund surplus funds in an ongoing escrow account following an annual analysis. That would be relevant if Ms. Aliff were demanding a refund of her excess escrow payments on an existing loan. Instead, in this case, Ms. Aliff tendered a payoff check in an amount in excess of the amount due - no escrow was involved with that payoff.

So why hold Ms. Aliff's funds? Discovery is needed to ferret out an answer because Ditech and Bank of America did not offer one in their initial Memorandum. They are invited to respond in their reply Memorandum.

Ms. Aliff offers a preliminary explanation. Initially, her loan with Bank of America set up an escrow account for the payment of real property taxes and insurance. The sum of $102.62 was placed into the escrow account monthly. After paying off the loan on August 31, 2016, Ditech, contrary to Ms. Aliff's direction, deposited the refund of $22,643.65 into her escrow account. This payment is reflected on the short-year escrow statement.

This begs the question: Why would Defendants make this deposit into the escrow account? The answer may have to do with "float", or interest earned on cash held by Bank of America and Ditech until it is paid out by them to borrowers like Ms.

Aliff.[6] Pursuant to *12 C.F.R. § 1024.34*, servicers can return any amounts remaining in escrow 20 working days after a borrower pays a mortgage loan in full. So by diverting the funds into an existing escrow account, Bank of America and Ditech attempted to hold onto and thereby "float" her $22,643.65 for about one month.

Ditech should have issued to Ms. Aliff a refund check on August 31, 2016 in the amount of $22,643.65, and thereafter issued to her a second check for $227.24 to pay and close out the escrow account. But by the diverting the refund into the escrow account, Ditech and Bank of America were attempting to get the "float" for the month, that is, they wanted to earn the interest on Ms. Aliff's money while running out the clock on the 20-business-days regulation that allows them to retain her funds in the escrow account. The inquiry by Ms. Aliff's counsel on September 16, 2016, apparently sped up the clock because the refund check was written that day. Yet the desire to "float" may have led the servicer to delay 3 more days before dropping the check in the mail. .

The amount earned on the 21-day float may seem inconsequential in the grand scheme of business affairs. In this case it is about $13 based upon a 1% rate of interest. So why pursue a claim over $13? Maybe the same reason we, as a society, prosecute joy riders who just "borrow a car" (*W.Va. Code §17A-8-4*) - it is wrong. Further, although this is only a $12 wrong in this case, Ditech's policy of diverting refunds into escrow accounts for the one-month float, repeated often enough, could result in substantial sums accruing to the company over time at the expense of the people due their refunds.

---

[6]     For a description of "float", see *Kelley v. Fid. Mgmt. Trust Co. (In re Fid. ERISA Float Litig.)*, 829 F.3d 55, 59 (1st Cir. 2016).

9

### 3. Conversion and Unjust Enrichment

Bank of America and Ditech converted Ms. Aliff's funds by withholding the money for 21 days. This created a common law action in trover - a suit to recover damages for the wrongful taking and withholding of personal property.[7] In *Haines v. Cochran Bros.*, 26 W. Va. 719 (1885), the West Virginia Supreme Court held that in order to recover on an action in trover, a plaintiff must show she had at the time of the conversion an absolute and unconditional right to the immediate possession of the personal property converted. The opinion went on to state that a conversion may be proved in three ways: 1) by a tortious taking; 2) defendant's use of the personal property indicating a claim of right in opposition to the rights of the owner; or 3) a refusal to give up the possession to the owner on demand.

Ms. Aliff requested the refund when she delivered the Nationwide check to pay off her loan. After the loan was paid off on August 31, 2016, Ms. Aliff had an absolute and unconditional right to $22,643.65. Ditech and Bank of America refused to abide by her instruction and request, deciding instead to keep and retain her refund for three weeks. This refusal sets forth a claim for trover and unjust enrichment. The damages have been elaborated previously.

---

[7]    Defendants attempt to mis-characterize and thereby limit Count Three in the First Amended Complaint by referring to the claim simply as "unjust enrichment" without mentioning "conversion". Further, Defendants' reference to *Prudential Ins. Co. v. Couch*, 180 W. Va. 210, 376 S.E.2d 104 (1988), offers this Court no assistance because that case involved a health insurer seeking a repayment from a policyholder for health insurance payments supposedly paid wrongfully to providers giving care to the policyholder's son.

## IV. CONCLUSION

Ms. Aliff alleges sufficient facts to support all three of her claims. These facts have been described more thoroughly in the attached exhibits. Defendants' Motion for Dismiss should therefore be denied.

J. William St Clair (5210)
Legal Aid of West Virginia
1005 Sixth Avenue
Huntington, West Virginia 25701
304.697.2070 ext 2515
bstclair@lawv.net
*Counsel for Plaintiff*

11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Huntington Division

TARA ALIFF,

     Plaintiff,

v.                              Civil Action No. 3:16-cv-1019
                                    Chambers, Judge

BANK OF AMERICA, N.A., and
DITECH FINANCIAL, LLC,

     Defendants.

## CERTIFICATE OF SERVICE

       The undersigned counsel for Plaintiff certifies that service of a copy of PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS, with accompanying exhibits, was made upon the parties by delivery of a copy of the same via CM/ECF as follows:

jon.kenney@troutmansanders.com
david.asbury@troutmansanders.com

       Made this 7th day of November, 2016

                                            J. William St Clair (5210)
                                          *Counsel for Plaintiff*