IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TARA ALIFF,

           Plaintiff,

v.                                                                                      CIVIL ACTION NO.   3:16-10119

BANK OF AMERICA, N.A. and
DITECH FINANCIAL, LLC,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending before the Court is Defendants' Bank of America's and Ditech Financial's Motion to Dismiss First Amended Complaint. ECF No. 9. Plaintiff Tara Aliff claims Defendants violated two provisions of the Truth in Lending Act ("TILA") and committed the common law tort of conversion by not timely refunding money owed to her and not crediting satisfaction of a loan principal on the same day Aliff tendered payment. First Am. Compl. ¶¶ 11–28, ECF No. 1-2. Defendants contend that they did not violate TILA nor commit the tort of conversion because they refunded the money owed to Aliff, and Aliff did not specifically plead that exceptions to TILA did not apply in this case. For the reasons stated in this Memorandum Opinion and Order, the Court **GRANTS** Defendants' Motion.

**I.     Background**

    In 2009, Aliff refinanced her home in Huntington, West Virginia through a loan from Bank of America ("BoA"). On July 20, 2016, a fire destroyed Aliff's home and her insurer declared it a total loss. Her insurer issued her a check in the amount of $58,132.30 to cover her loss. Aliff still owed $35,261.41 on the BoA loan. Aliff contacted Ditech, the loan servicer to which she had been

making payments, to discuss satisfaction of the outstanding balance of the loan. Ditech agreed to accept the check for all of the insurance proceeds, tender the outstanding funds to BoA, and refund the excess to Aliff. Ditech received the check on August 29, 2016, credited the payment on August 31, 2016, and mailed the balance of the funds, $22,870.89, to Aliff on September 19, 2016.

Aliff now brings suit against Ditech and BoA alleging violations of TILA and common law conversion for not refunding the balance of the insurance proceeds in a "commercially reasonable" time, and for not crediting her account with the satisfaction of the loan on the day the payment was made. As a result, she claims that she lost the use of her funds and paid additional interest which she did not owe.

## II. Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court follows a two-step approach: (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and then (2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

For the second step, a court must take the remaining factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555–56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face."

*Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

### III. Analysis

#### A. *Count One: Violation of 15 U.S.C. § 1666d*

Aliff's first cause of action is for violation of 15 U.S.C. § 1666d. Section 1666d requires a creditor to return credit balances in excess of $1 to the obligor of the credit transaction. The section reads in its entirety:

> Whenever a credit balance in excess of $1 is created in connection with a consumer credit transaction through (1) transmittal of funds to a creditor in excess of the total balance due on an account, (2) rebates of unearned finance charges or insurance premiums, or (3) amounts otherwise owed to or held for the benefit of an obligor, the creditor shall–
>
>     (A)   credit the amount of the credit balance to the consumer's account;
>
>     (B)   refund any part of the amount of the remaining credit balance, upon request of the consumer; and
>
>     (C)   make a good faith effort to refund to the consumer by cash, check, or money order any part of the amount of the credit balance remaining in the account for more than six months, except that no further action is required in any case in which the consumer's current location is not known by the creditor and cannot be traced through the consumer's last known address or telephone number.

§ 1666d. Aliff alleges in her Complaint that BoA had a duty to refund the excess insurance proceeds within a commercially reasonable time and that as BoA's agent, Ditech was subject to the same duty. Aliff argues that twenty-one days, the time it took Ditech to mail the check, is not

commercially reasonable as the term is defined in a separate statute, the Expedited Availability of Funds Act, 12 U.S.C §§ 4001–4010.

Defendants argue that they did not violate 1666d because they returned the funds to Aliff and the statute does not prescribe a schedule for how quickly a refund must occur.

The Court agrees with Defendants' reading of TILA. However, the Court believes an additional point of statutory interpretation must be addressed first. Although neither party treated the issue in their briefing, the Court does not read section 1666d to include loan servicers like Ditech. Section 1666d, like other sections of TILA, compels a "creditor" to refund excess credit balances—not servicers. *See* §§ 1666d, 1640. Aliff does not allege that Ditech is a creditor. She alleges in Count One that Ditech was the "agent" of BoA, indisputably a "creditor," and that it is a "servicer" as defined by TILA in Count Two. First Am. Compl. ¶¶ 14, 21.

TILA defines a "creditor" as:

> a person who both (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . . .

§ 1602(g). Aliff claims that BoA originated her mortgage and that she made her payments to Ditech. First Am. Compl. ¶¶ 2, 5. Aliff does not allege that Ditech is a "creditor" as defined by TILA and does not allege facts that would permit the Court to make such finding.

No federal court has had the occasion to address this specific issue, but the Court is nonetheless guided by the plain meaning of the statute. "There is of course no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *Huffman v. Western Nuclear, Inc.* 486 U.S. 663, 672 (1988) (quoting *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543 (1940)). Section 1666d makes no

mention of servicers. It only refers to creditors. Thus, assuming the facts plead in the complaint as true, as the Court must when presented with a motion to dismiss, Ditech is not a creditor but a servicer and therefore not subject to liability pursuant to section 1666d.

Further bolstering the Court's interpretation, federal courts that have addressed other sections of TILA that also refer to creditors as the subject of regulation have found that the use of the term does not include servicers. For instance, courts that have interpreted section 1640 of TILA, which imposes civil liability on "[a]ny *creditor* who fails to comply with any requirement imposed under this part . . . with respect to any person. . . ." have unanimously found that the section does not impose civil liability on servicers. § 1640(a) (emphasis added); *see Payne v. Seterus Inc.*, No. 16-cv-0203, 2016 WL 4521659, at *7 (W.D. La. Aug. 8, 2016) ("[C]ourts uniformly have held that there is no servicer liability under TILA."); *Barnes v. Carrington Mortg. Servs., LLC*, No. 15-cv-6465, 2016 WL 3018693, at *1 (D.N.J. May 24, 2016) (holding section 1640 of TILA does not create a private right of action against loan servicers, only creditors); *Simmons v. Aurora Bank FSB*, No. 5:13-cv-00482, 2016 WL 192571, at *9 (N.D. Cal. Jan. 15, 2016) ("The only parties who can be liable for TILA violations are the original creditor and assignees of that creditor." (quoting *Torres v. Wells Fargo Home Mortg., Inc.*, No. C10-cv-04761, 2011 WL 11506, at *6 (N.D. Cal. Jan. 4, 2011)); *Lucien v. Fed. Nat'l Mortg. Ass'n*, 21 F. Supp. 3d 1379, 1383 (S.D. Fla. 2014) ("The text of TILA's civil damages provision only provides for *creditor* liability—not servicer liability). Accordingly, the Court finds that section 1666d of TILA does not impose a duty on loan servicers, only creditors as they are defined by TILA.

The Court will now turn to Defendants' primary argument that section 1666d only requires a refund and does not impose a specific schedule for the refund. The Court must agree with Defendants' reading of the statute.

The statute's requirements are straightforward and unambiguous. Where a credit transaction results in an excess balance of $1 or more, the creditor must, among other things not relevant here, refund the money. § 1666d. Defendants in fact refunded Aliff the balance of the insurance proceeds after deducting the outstanding portion of her mortgage. The statue does not mandate a schedule for the refund. Moreover, notwithstanding Aliff's contention, section 1666d makes no mention of "commercially reasonable" as the measure of a timely refund. The Court is unwilling to import the timing standard from an unrelated statute to TILA where there is no support to do so. Had Congress wished to impose a date-certain deadline to refund excess funds, the Court believes it would have stated it explicitly, not required litigants and courts to go rummaging through other statutes to find it.

It is surely the case that there is some outer limit to how long BoA could retain excess funds owed to a consumer, but the Court is confident that it is not twenty-one days. It also must be noted that section 1666d(C) appears to address this problem by requiring creditors to make a good faith effort to return excess funds that have languished with the creditor for six months. Indeed, if a creditor may allow excess funds to wallow in its account for six months before making the required effort to return them, it would be almost preposterous to assume that a twenty-one day stint in a BoA or Ditech account would violate TILA. In short, Aliff's argument attempts to graft onto the statute a wholly alien interpretation unsupported by the plain meaning of the words chosen by Congress.

B. *Count Two: Violation of 15 U.S.C. § 1639f*

Aliff's second cause of action alleges that Ditech, and notably not BoA, was required to credit the satisfaction of the loan on the day payment was received. First Am. Compl. ¶¶ 20–23.

Instead, Ditech did not credit her account for two days causing her to incur additional interest charges. First Am. Compl. ¶ 9.

> Section 1639f states:
>
> In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency

§ 1639f.

Section 1639f does not create a private right of action. Section 1640(a) creates a private right of action for violations of TILA, although only against creditors, not servicers. Section 1640(a) states in relevant part: "Any *creditor* who fails to comply with any requirement imposed under this part . . . ." "The statute refers only to a creditor's liability—not a loan servicer's." *Barnes*, 2016 WL 3018693, at *1. As already noted in the previous section, the courts that have treated this subject have uniformly held that section 1640(a) does not extend liability to loan servicers. *See Payne*, 2016 WL 4521659, at *7 ("[C]ourts uniformly have held that there is no servicer liability under TILA."); *Barnes*, 2016 WL 3018693, at *1 (holding section 1640(a) of TILA does not create a private right of action against loan servicers, only creditors); *Simmons*, 2016 WL 192571, at *9 ("The only parties who can be liable for TILA violations are the original creditor and assignees of that creditor." (quoting *Torres*, 2011 WL 11506, at *6); *Lucien*, 21 F. Supp. 3d at 1383 ("The text of TILA's civil damages provision [1640] only provides for *creditor* liability—not servicer liability).

Section 1640 does not let servicers off the hook, however. It just does not create a private cause of action. The statute permits "[a]n action to enforce a violation of section . . . 1639f . . . [to] be brought by the appropriate State attorney general . . . ." § 1640(e).

Aliff did not allege BoA violated section 1639f. She only alleged that Ditech violated 1639f in Count Two. Ditech, as alleged by Aliff, is a servicer, not a creditor as defined by TILA. Accordingly, Aliff has failed to state a claim upon which relief can be granted in Count Two of her Complaint.

C. *Count Three: Conversion*

Aliff's final cause of action against BOA and Ditech is a state common law claim for conversion. In the preceding two sections, the Court found that Aliff's federal claims cannot proceed. Thus, only her conversion claim remains. Aliff may not rely on diversity jurisdiction for her conversion claim because although there appears to be complete diversity, she has not pled a sufficient amount in controversy to satisfy jurisdictional requirements. *See* 28 U.S.C. § 1332. The Court may act with discretion to exercise its supplemental jurisdiction over Aliff's state law claim. *See* 28 U.S.C. § 1367. The Court, however, refuses to exercise supplemental jurisdiction.

The Supreme Court's opinions construing section 1367 "have established that pendant jurisdiction is a doctrine of discretion, not of plaintiff's right." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). The Court recently held "[a] district court's decision whether to exercise [supplemental jurisdiction] after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009) (citing § 1367(c)). When weighing the decision to exercise its supplemental jurisdiction, a district court should deal with the claim "in the manner that best serves the principles of economy, convenience, fairness, and comity." *Int'l Coll. of Surgeons*, 522 U.S. at 172–73 (quoting *Carnegi-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).

The Court has original jurisdiction over Aliff's TILA claims. There is no independent basis for her conversion claim, however. Aliff's federal claims cannot persist and accordingly the Court believes that a state law conversion claim with no federal implications and very little amount in controversy is best litigated in state court. Should Aliff wish to pursue her claim, she may do so there. Aliff's conversion claim is therefore dismissed without prejudice.

### IV. Conclusion

Defendants' Motion to Dismiss First Amended Complaint, ECF No. 6 is **GRANTED**. Plaintiff's causes of action in Count One and Count Two are **DISMISSED** with prejudice. Plaintiff's cause of action in Count Three is **DISMISSED** without prejudice.

The Court **DIRECTS** the Clerk to send a copy of this Order and Notice to counsel of record and any unrepresented parties.

ENTER: January 31, 2017

_____
ROBERT C. CHAMBERS, CHIEF JUDGE